Milewski v. Kurtz.        77 *N. J. L.*

JOHN MILEWSKI v. JOSEPH KURTZ.

Submitted July 3, 1908—Decided November 9, 1908.

In an action by a husband for the alienation of his wife's affections, his consent to the acts constituting and contributing to the injury is a bar to recovery.

On rule to show cause.

Before Justices REED, BERGEN and VOORHEES.

For the plaintiff, *William B. Mackay, Jr.*

For the defendant, *Horace L. Allen.*

The opinion of the court was delivered by

VOORHEES, J.   This is a suit for the alienation of a wife's affections.   At the Circuit a verdict for the plaintiff was rendered for $750, whereupon this rule to show cause was allowed.

The testimony shows that the defendant was a frequent visitor at plaintiff's house, being often there in the daytime and frequently remaining all night when the husband was not at home; that previous to the coming of the defendant, and his attentions to the wife, the relations existing between the husband and wife were friendly and affectionate; that the defendant, after introduction to the plaintiff by the wife, became friendly with the husband, so much so that the defendant often remained over night with the plaintiff, and, according to the plaintiff's own testimony, more than once the defendant slept in the same bed with the plaintiff and his wife, upon plaintiff's invitation; that defendant took the wife out driving; that in the month of October, 1906, there arose a quarrel between the plaintiff and his wife and the defendant, after which plaintiff left his home and went to work, leaving his wife with the defendant, and when he re-

turned home that night the wife and the defendant had departed. This happened on Friday, and on Monday she came back for her clothes and told the plaintiff that she was going to leave him, and when asked to give her reason for it said: "I am done with you, I won't tell you, but I am going to leave you." That it was none of his business; then she left and has never been back to stay, but did return about a week afterwards with a police officer to get the rest of her clothes. Plaintiff subsequently went to the defendant's house in Hoboken. The wife was found working there and refused to go home with plaintiff, and told him that she was not going to live with him. Before this time the plaintiff, when working in Hoboken where the defendant lived, had stayed at the defendant's house. He testifies that on Tuesdays he was never home and afterwards found out that defendant had spent these Tuesdays with his wife. In addition to plaintiff's testimony, there were other witnesses who testified to the fact that defendant called at plaintiff's house when the wife was there and the husband away; that they went out walking together, he holding her by the hand or by the arm; that defendant and the wife sat on the stoop until nearly midnight.

There was sufficient evidence in the case from which the jury might infer that the defendant had alienated the affections of the wife. It also appeared that many of the acts of the defendant and his wife were known to the plaintiff, and sufficiently so to indicate that the husband consented to the alienation.

The evidence of the defendant shows that he was a friend of the family of the wife before she married and frequently called at her house; that after her marriage she and her husband remained with her parents, the defendant still continuing to call there; that after two or three years the husband and wife started housekeeping, and the defendant, on the invitation of the husband, continued to visit them. The husband was during these visits sometimes at home and sometimes he was not; but he was always at home nights and frequently invited the defendant to remain over night, and that he, at plaintiff's request, slept in the same room with plaintiff

and his wife and several times, at plaintiff's invitation, occupied the same bed with the husband and wife. Plaintiff said of the defendant, "He used him like a friend." That in April, 1907, the plaintiff started to work in Hoboken, making his home with the defendant, and continued there until September following, during which time he visited his wife at her home in Hackensack, coming on Saturday and returning Monday. The wife testifies that her husband wanted her to go to Hoboken and earn her living; he wanted her to go to the defendant's home where his mother was then living; that she went there and did the housekeeping for Mrs. Kurtz, then her husband got out of work and went back to Hackensack, but would not take her with him. About four months before this suit was brought the mother of Kurtz died and plaintiff's wife has remained at defendant's home ever since working for him at $25 a month.

Whatever inferences may be drawn from the plaintiff's case as to the enticement of the wife to leave her husband is completely overthrown by the testimony of the defendant. The substance of the case is that the wife was taken to Hoboken by the husband and put to work by him in Mr. Kurtz's house where he stayed with her; that she was earning there at first, while the husband remained, her living and clothing, and after the husband left and returned to Hackensack she was paid $25 a month. The preponderance of evidence is in favor of the theory that the husband was perfectly willing that she should remain there and work.

The plaintiff, to sustain his case, is obliged to show by a preponderance of evidence that the defendant wrongfully and willfully attempted to alienate the affections of the consort and to deprive plaintiff of the consort's society, that such attempt was successful and that the plaintiff was not a consenting party. *Van Olinda* v. *Hall,* 88 *Hun* 452; *Reading* v. *Gazzam,* 200 *Pa. St.* 70.

In *Prettyman* v. *Williamson,* 1 *Pennew.* (*Del.*) 224, 234, it was held that the consent of the husband to the act complained of is a bar to an action for alienating the wife's affections, citing *Bunnell* v. *Greathead,* 49 *Barb.* 106. In the

latter case the court said: "The plaintiff had the power, and it was his duty as a husband to interfere and prevent the debauchment of his wife. It is a general rule of law that no one can maintain an action for a wrong when he has consented or contributed to the act which occasions his loss." See, also, as bearing on this subject, *Hedden* v. *Hedden,* 6 *C. E. Gr.* 61, 74.

The testimony of the plaintiff shows that he consented to the very acts calculated to inflict upon him the injury for which he now seeks damages.

The rule to show cause must be made absolute.