## STATE v. MARCELLUS COLBY.

*Evidence. Competency of Particeps Criminis as a Witness. Record of Marriage.*

On trial on indictment for adultery, a paper purporting to be the original certificate of marriage of the *particeps criminis* was offered in evidence, and sought to be authenticated by the testimony of the town clerk, who testified that he thought, but was not positive, that the certificate was returned to him by the minister who married the parties, and that he supposed the minister signed it, but that he did not know his handwriting. *Held,* that whether it was in fact signed by the minister was a material question, and that that not having been affirmatively settled, the paper was inadmissible to prove the fact of marriage.

The *particeps criminis* may testify in such cases as well as in other criminal cases.

To show marriage, the prosecution was allowed to introduce in evidence a copy of the town record, purporting to be a copy of the marriage certificates. The copy gave the names, age, residence, &c., of the parties, and barely stated the name and official station of the minister by whom they were married. *Held,* that as the copy did not contain in addition a copy of the record of the certificate by the minister that he had married the parties, it was not a copy of the record of a completed marriage certificate, such as the law required, and was therefore inadmissible to prove the fact of marriage.

The prosecution called the mother of A., the alleged *particeps,* who testified that within a week after the marriage of A., respondent came to their house and desired

to go into the bedroom where A. and her husband were, saying he wanted to demand a watch that he had let A. have; that he attempted to force his way in, and on being prevented, said he would shoot A. and her husband if they lived together as man and wife; that A's husband soon went away to work and left A. behind, who soon went to S., where the act in question was alleged to have been committed, where she remained about two weeks; and that she was then brought back and stayed about an hour while her husband was there. The prosecution then asked the witness if on that occasion A. and her husband had any words, and whether they appeared as though they had had difficulty ; and the witness was permitted to answer, and said, "I guess they had no words; guess they had had trouble, the way things appeared." There was evidence tending to show that soon after that the respondent and A. went to Canada together, and remained three or four months, and some of the time occupied the same room. *Held*, that the testimony of the mother had no tendency to show that the respondent was guilty, and was therefore inadmissible.

INDICTMENT for adultery alleged to have been committed on December 21, 1874, with Anna Ada Smith. Plea, not guilty, and trial by jury, December Term, 1877, Caledonia County, Ross, J., presiding.

The prosecution offered in evidence a paper that purported to be a certificate of the marriage of said Anna to Noble Smith, and called the town clerk by whom it was issued, who testified that he thought the certificate was returned to him by the minister who married them, but that he was not positive, and that he supposed the minister signed it, but that he did not know his handwriting. The respondent objected to the introduction of the paper as evidence, but it was admitted ; to which the respondent excepted.

The prosecution then called said Anna and offered to prove by her that the respondent committed the offence in question with her. The respondent objected for that she was incompetent, but she was permitted to testify ; to which the respondent excepted.

The respondent offered in evidence a certified copy from the records of the town of Sutton purporting to show the marriage of the respondent, and a like copy from the records of the town of Burke purporting to show the marriage of the said Anna. The last-named copy was as follows :

Marriage Certificate. October 6th, 1874. No. 6. Noble Smith; residence, Burke, Vt.; age 27; occupation, farmer; born, Washington, Vt.; parents' names, Chase and Maranda (Writer) Smith ; first marriage. Bride's name, Ada A. Bugbee; residence, Burke, Vt.; age, 16; Burke, Vt.; parents' names, Selim and Sarah A. (Drown) Bugbee ; first mar-

riage. Name and title of official person by whom married, Daniel Lewis, Minister of the Gospel, West Burke, Vt. The above is a true copy of the record in the town clerk's office, Burke.

Attest, THERON BELL, *Town Clerk.*

The other copy was in substantially the same form. The respondent objected to their admission, but they were admitted ; to which the respondent excepted.

The prosecution called as a witness Sarah A. Bugbee, the mother of said Anna, who testified that said Anna and her husband remained at their house about a week after their marriage ; that during that time the respondent came there and desired to go into the bedroom where they were, saying he wanted to demand a watch that he had let said Anna have ; that he attempted to force his way in, and, on being prevented, said he would shoot said Anna and her husband if they lived together as man and wife ; that soon after that said Noble went away to work, leaving said Anna, soon after which she went to Henry Bugbee's, in Sutton, where the crime in question was alleged to have been committed, and remained about two weeks ; and that she was then brought back by Henry Bugbee and stayed about an hour while her husband was there. The prosecution then asked the witness if on that occasion Smith and his wife had any words, and whether they appeared as though they had had difficulty. The respondent objected, but the witness was permitted to answer. Her answer was, " I guess they had no words ; guess they had had trouble, the way things appeared." To that the respondent excepted. There was evidence tending to show that soon after that the respondent and said Anna went to Canada together, and remained three or four months, and during some of the time occupied the same room.

The court charged that it was unsafe to convict on the uncorroborated testimony of a *particeps criminis*, but that the testimony of said Anna should be weighed like that of a *particeps* in a trial for any other kind of crime. To the latter remark, the respondent excepted.

*H. C. Belden*, for the respondent.

The admission of the paper that was sought to be identified as the marriage certificate was erroneous. It was not evidence unless the minister's signature was genuine.

The witness Anna was incompetent because she was *particeps criminis*.

The testimony of Mrs. Bugbee was improperly admitted. But though it was immaterial, the conviction cannot be allowed to stand. *Weed* v. *Bishop*, 7 Conn. 428.

The papers purporting to be copies of records were not admissible. There was no copy of certificate by the minister. *McGuire* v. *Sayward*, 22 Me. 230 ; *Owen* v. *Hoyle*, 15 Ind. 147 ; *Drake* v. *Merrill*, 2 Jones, 368 ; *Foot* v. *McDonald*, 27 Miss. 610.

*Henry C. Ide*, State's attorney, for the State.

The original certificate was a proper piece of evidence tending to show the fact of marriage. There is a presumption in favor of the regularity of the proceedings. 2 Phil. Ev. 437 ; *State* v. *Abbey*, 29 Vt. 60, 65 ; 1 Stark. Ev. 170 *et seq.; Sumner* v. *Lebec*, 2 Greenl. 223.

The witness Anna was competent. *State* v. *Annice*, N. Chip. 9, is not law. *State* v. *Crowley*, 13 Ala. 172. The testimony of any accomplice is admissible. Roscoe Crim. Ev. 128. And see *Ratcliff* v. *Wales*, 1 Hill, 63 ; *Chamberlain* v. *People*, 9 Smith, 85 ; *People* v. *Ontario*, 15 Barb. 286.

The copies of record were admissible. *Derby* v. *Salem*, 30 Vt. 722 ; 1 Greenl. Ev. ss. 483, 484 ; *Jackson* v. *Boneham*, 15 Johns. 226 ; *Oakes* v. *Hill*, 14 Pick. 448 ; *United States* v. *Verchman*, 7 Pet. 85 ; Gen. Sts. c. 69, s. 13.

The admission of Mrs. Bugbee's testimony is no reason for the reversal of the judgment. Her testimony was introduced merely to make the case coherent, and served that purpose.

The opinion of the court was delivered by

BARRETT, J. 1st. The marriage certificate was not shown to have been signed by the minister who is said to have performed the marriage service. That is not a document that authenticates

itself on being produced. Whether it is signed by the minister, is a material question to be determined upon pertinent and sufficient evidence. This was lacking,—the town clerk being unable to testify that, in fact, the minister returned to him the certificate bearing his name. If the town clerk had so testified we are not prepared to say that it would have been unwarrantable for the court to admit the paper as evidence, subject to question to the jury whether it was signed by the minister. We view this independently of the fact that the record itself was introduced without objection. That, if it had been a record of a fully completed certificate, would be evidence showing the marriage, unless impeached.

2d. Admitting the *particeps* to testify was proper. There is no legitimate reason for distinguishing the *particeps* in this case from the *particeps* in any other. The old case in Chipman, *State* v. *Annice*, gives no reason for the ruling, and none can be given that would not be of equal force in any other case. That case has been disregarded by several judges recently in ruling on the subject in County Courts. This is the first time of taking exception to the ruling.

3d. The copies from the town clerk's office do not purport to be copies of the marriage certificate required by law to be begun by the town clerk and finished by the minister, and by the minister returned to the town clerk. The statute requires the record to be made and completed by the town clerk, " so that it shall conform in all respects to the certificates so returned to him." This contemplates and requires that the certificate made by the minister should be recorded. The copies given in evidence do not contain that, but only a statement by the town clerk, of the name of the officer who performed the marriage. This is not one of the things required by the statute to be stated in the certificate to be issued by him. To such certificate is to be added the certificate of the minister, and then the record required to be made by the town clerk of his certificate is to be completed by adding a record of the certificate made by the minister. This was not done, and so the copies of record fail to show the fact of marriage by lawful documentary evidence.

4th.   The testimony of Mrs. Bugbee had no tendency to show that respondent was guilty of the crime charged.   We cannot say that it did not operate to his prejudice.   It rather looks as if it was offered as predicating an inference of improper relations with the respondent, drawn from the fact that the witness " guessed Ada and her husband had had trouble, the way things appeared."

The exceptions are sustained, verdict set aside, and new trial granted.                                                   *Cause Remanded.*