### Evelyn Anderson Hedman v. Hazel L. Siegriest

[ 248 A.2d 685 ]

October Term, 1968

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed December 3, 1968

*Black, Wilson & Hoff* for the Plaintiff.

*Joseph S. Wool, Esq.,* for the Defendant.

**Keyser, J.** The plaintiff's complaint charges the defendant with the malicious alienation of her husband's affections and with criminal conversation. Trial was by jury. At the close of plaintiff's case the court granted defendant's motion for a directed verdict and entered judgment for the defendant. The defendant advanced in essence two grounds as the basis of her motion, namely: (1) insufficiency of evidence to support plaintiff's allegations and (2) lack of any evidence that affection existed between the plaintiff and her husband that could be alienated.

In granting the motion on the grounds urged by the defendant, the court ruled as a matter of law that the evidence, viewed

in the light most favorable to the plaintiff, would not support a verdict in the plaintiff's favor. *Rivard* v. *Roy*, 124 Vt. 32, 37, 196 A.2d 497. In passing on defendant's motion for a directed verdict, the evidence must be viewed in the light most favorable to the plaintiff and the effect of modifying evidence is to be excluded. *Eastman* v. *Williams*, 124 Vt. 445, 449, 207 A.2d 146. All conflicts are resolved against the defendant and contradictions and contrary inferences are for the jury to resolve. *Berry* v. *Whitney*, 125 Vt. 383, 384, 385, 217 A.2d 41. The motion cannot be granted if there is evidence fairly and reasonably tending to support plaintiff's claim. *Ibid*.

Viewed in this light the evidence discloses the following factual situation. The plaintiff and her husband were married in Maine on May 1, 1934 and lived there until they moved to Vermont in 1943. They lived together as husband and wife in South Burlington until their separation in October 1964 when the plaintiff instituted a divorce action.

In the fall of 1963 Mr. Hedman became acquainted with the defendant at a restaurant in Milton. After this Mr. Hedman continually visited, or dated, defendant at least once a week and more often as time progressed. They were together at defendant's home in Essex Junction and at her camp in Malletts Bay, also at Hedman's camp in Milton. They played cards, watched television and dined out as well as at defendant's home. They went to parties, frequently went swimming at defendant's camp, went ice fishing and took two weekend trips to Massachusetts to visit defendant's sister.

The plaintiff did not know of her husband's relationship with the defendant until told about it by her husband quite some time after it began. He told his wife all the details of his affair with the defendant and indicated he had had intimate relations with her. The plaintiff became upset upon learning of this situation. In January 1964, the plaintiff noticed her husband acted indifferent toward her. He told her he had found another woman whom he said he wanted. Also he suggested to plaintiff that she should live alone and obtain a divorce.

The defendant knew Mr. Hedman was a married man being told of this fact on her second date with him. The plaintiff called the defendant and told her she didn't want her home broken up. However, the defendant continued to see Mr. Hedman just as frequently as before and did so even after service of the writ in this case. Mr. Hedman had expressed to defendant his love for her and his affection for the defendant was quite apparent to her.

The plaintiff brought divorce proceedings in 1964. Her husband then moved out of the home and took up residence at his camp in Milton. Decree of divorce was granted the plaintiff in October 1965.

The plaintiff and her husband got along fine "for quite a while" after moving to Vermont. She felt that except for the defendant, she and her husband would still be living together "because we were happy together."

The plaintiff claims the court erred in granting defendant's motion on the ground that there was insufficient evidence of alienation of affection to carry the case to the jury. The defendant argues that the plaintiff failed to prove the allegations in the complaint by a preponderance of the evidence.

■ It is not the province of the court to weigh the evidence and determine which preponderates. Where there is some evidence which tends to support plaintiff's case it is for the jury to consider, construe and decide the case according to the weight it gives to the evidence.

■ The essential elements of plaintiff's case are threefold: (1) defendant's wrongful conduct; (2) plaintiff's loss of her husband's affections or consortium; and (3) causal connection between defendant's acts and conduct and plaintiff's loss of her husband's affections.

■ The plaintiff had the burden of showing that defendant's conduct was actuated by malice; but express malice need not be proved. Malice in the sense used in actions of this kind implies no more than the intentional doing of a wrongful act without just cause or excuse, and it may be inferred from conduct. *Woodhouse* v. *Woodhouse*, 99 Vt. 91, 130 A.758.

■ The fact that beginning in October 1963 the defendant and plaintiff's husband spent a good deal of time together is not contradicted. There was a change in Mr. Hedman's attitude and conduct toward his wife after he began dating the defendant. The testimony indicates that this affair culminated in the plaintiff obtaining a divorce. Previously, according to the plaintiff, they had been happy. It is undisputed that they lived together as husband and wife and were until the defendant entered into the marital arena. There is evidence tending to show an intentional and continual interference by the defendant of the marital relationship by her acts and conduct after receiving plaintiff's call that she did not want her home broken up.

 The facts shown by the evidence establishes the logical inference that the defendant, in part at least, did wrongfully cause the separation of the plaintiff and her husband, whereby the plaintiff lost her husband's consortium. Loss of consortium is the gist of an action for alienation. *Shedrick* v. *Lathrop,* 106 Vt. 311, 317, 172 A. 630. The term "consortium" includes plaintiff's right to the affection, conjugal society, assistance, companionship, comfort and services of her husband. *Ibid.* The loss or impairment of consortium within the meaning of the term will support an action for alienation of affections if the defendant's direct and intentional interference with the marital relation was the controlling cause.

To paraphrase what is said in *Knight* v. *Willey,* 120 Vt. 256, 259, 138 A.2d 596, 599: "Just and reasonable triers of fact might well decide that the attentions paid to Mr. Hedman by the defendant had progressed sufficiently far beyond the limits of propriety to destroy, in part at least, Mr. Hedman's affections for his wife."

On the state of the evidence as it stood at the close of plaintiff's case, it was error for the court to grant defendant's motion for a directed verdict. There was sufficient evidence produced to warrant the conclusion that the defendant wilfully and intentionally encroached and trespassed upon the marital relations of the plaintiff.

A further ground of defendant's motion was that Mr. Hedman had no affection for his wife. This position is asserted as a principal defense but the testimony was conflicting on this issue. Although from what we have said a reversal is required, we consider this question in order to put it to rest and foreclose its consideration in any further action taken in the case.

It is apparent that this situation was a controlling factor in the action taken by the court. The plaintiff says this was error. With this we agree. The plaintiff claims that even if there are no affections this is not a bar to an action for alienation. The defendant disagrees with plaintiff's contention.

 In taking this position the defendant ignores our well settled law which holds that even if there is no affection between a husband and his wife, another person has no right to cut off all chance of its springing up in the future. Proof that there has been a loss of affection between the parties does not constitute a defense, or a bar, to the action. *Knight* v. *Willey, supra,* at page 261, 138 A.2d 596.

The law indulges in the hope that notwithstanding that affection may be dead, or appears so, there is lurking in the hearts of the parties some atom left which may spring into returning affection and result in a reconciliation. It is against the policy of the law to allow this to be wrongfully interfered with. *Jenness* v. *Simpson,* 84 Vt. 127, 141, 78 A. 886.

Evidence of unhappy relations existing between husband and wife prior to the alienation, or want of affection between them, can only be shown in mitigation of damages. *Lewis* v. *Roby,* 79 Vt. 487, 491, 65 A. 524; *Miller* v. *Pearce,* 86 Vt. 322, 325, 85 A. 620, 43 L.R.A., N.S., 332. This rule was stated in *Fratini* v. *Caslini,* 66 Vt. 273, 276, 29 A. 252, and has been followed in numerous cases since some of which are cited *supra.* This case presents no justification to overrule our long established law on this point.

The court erroneously granted defendant's motion for a directed verdict and reversal of the judgment is required.

*Judgment reversed and cause remanded.*